### HINES et al. v. THOMAS et al.
### No. 13222.

Court of Civil Appeals of Texas. Dallas.
July 10, 1942.

M. S. Church and W. F. Bane, both of Dallas, for appellants.

Walter E. Allison, of Dallas, for appellees.

BOND, Chief Justice.

This suit was brought by plaintiffs (appellees) against defendants (appellants) for an accounting derived from an oil, gas and mineral venture entered into by Harry Hines, J. D. Hancock and Cullen F. Thomas, since deceased. The agreement was in parol, subsequently acknowledged in letter dated March 4, 1938, addressed by Hines and Hancock to Thomas, and accepted by him. The contract evinces the raising of a $15,000 fund with which to finish the payment of 1,300 acres of oil and gas leases in Archer County, Texas, owned or controlled by Hines and Hancock, and to defray expenses incident to the drilling of a well thereon to a depth of 4,000 ft., unless oil or gas, in paying quantities, is had at a lesser depth. The letter acknowledged receipt by the writers of $5,000 paid by Thomas into the $15,000 fund, and recites pertinent here that: "It is understood that we propose to sell leases or interests out of this block, and that the proceeds from all sales shall go to you and the parties who put up the remainder of the $15,000.00, un-

til the $15,000.00 has been refunded to the parties putting up the same, providing that much is sold before the completion of the well."

On January 20, 1938, the defendant Hines, for the two promoters, advised Mr. Thomas by letter of the completion of the well to 4,002 ft., and of sad disappointment that the well was not a producer; and enclosed a list of leases sold, aggregating the sum of $7,300, and attached thereto the following detailed statement:

"The refund on the above sale of $7,300 would be $486.66 for each 1/15th of the $15,000.00, and as you put up 5/15ths, your proportionate share is $2,433.30. We were late in making these sales. The Continental was not made until the well was past 3,000 ft., and we have not completed the title requirements and made collections. In fact, we are having some controversy with Eason Oil Company on that account at the present time, but we feel like it will all clear up satisfactorily, and when it does, remittance will be made covering your portion of the collections."

Plaintiffs hinged their suit on the account stated, as coming within the terms of the contract; defendants answered with special exceptions, general demurrer and general denial. In limine, the court overruled the exceptions and demurrers and without the intervention of a jury, entered judgment for plaintiffs in the sum of $2,433.30, with 6% interest thereon from June 20, 1938, until paid, and all costs of suit. There are no pleadings or proof that the $15,000 fund, in its entirety, was ever raised, or that the leases or interests in the block of acreage, to the amount of $7,300, were ever sold and collected for, but there is evidence that the well was completed to a depth of 4,002 ft. prior to June 20, 1938; in consequence, appellants contend in effect that, in the absence of such showing, the contract is not shown to be fully executed, or the pro rata refund to Mr. Thomas presently due. The contention is based upon the proviso or conditional stipulation in the contract that the refund shall not be paid unless as much as $15,000 worth of the 1,300-acre leasehold is sold before completion of the well, that the letter of June 20, 1938, evinces that the $7,300 was not due the contributors until collected, and that the burden of proof was upon the plaintiffs to show such conditions had been accomplished before the refund was due. Hence, in the absence of pleadings and proof, it cannot be assumed that the stated account represents a true and

correct statement of the leases sold, and the $7,300 collected and allocated to the $15,000 fund.

It will be observed that Hines and Hancock proposed the sale of the leases or interests therein; that they were to refund to each of the parties who put up the money, including Mr. Thomas, his proportionate part paid into the common enterprise; that they were the active agencies in the enterprise, supervised the sale of the leases, collected the money, and made all expenditures,—while Thomas and the other contributors of the fund were merely silent partners. Thomas had no voice in the enterprise as a managerial head, and, evidently knew nothing of the financial status, or details of the oil syndicate. It is clear, we think, that proof incident to the operation of the enterprise was peculiarly within the knowledge of Hines and Hancock, and if the leases had been sold, as evidenced by the letter of June 20, 1938, and the $7,300 had not been collected, it was within the exclusive power of appellants to disclose that fact,—not within the power of Thomas. It would indeed be a harsh rule to place the burden of proof upon the plaintiffs to show such intricate details, under circumstances as here revealed.

■ It will be observed from the stated account (June 20, 1938) that Hines and Hancock had sold leases to the amount of $7,300, subject to proration to the contributors, if and when collected from the Continental and on settlement of a controversy as to the title with Eason Oil Company; but, they say, "it will all clear up satisfactorily, and when it does, remittance will be made covering your portion of the collections." Now Hines and Hancock, being the managers of the common enterprise, having all to do with the sale of the leases and collection of money therefor, evidently knew whether the Continental and Eason controversies had been settled and the consideration paid for the leases. When this suit was filed December 4, 1940, if not before, it was the duty of Hines and Hancock to advise Thomas, or his representatives, of the true status of the enterprise, rather than file pleadings herein of non-disclosure of facts, thus shifting the burden to Thomas' heirs (appellees) to prove that the collections had been made. We think appellants occupied the position of trustees in a common venture, thus it devolved upon them to disclose the fiduciary relationship. The letter-stated account makes out a prima facie case, casting the burden upon appellants to overcome the essential elements of the contract. This relationship of trust prohibits the imposition of conditions, either precedent or subsequent, upon appellees, and if any event destroys the effect of the account, it must be held that it was incumbent upon appellants to plead and prove such event. It would have been easy for appellants to plead and prove that the $7,300 for the leases sold had not been collected, thus relieving themselves of liability; but, having failed to do so, the trial court did not err in the judgment rendered for appellees for the Thomas pro rata part of $7,300.

■ Appellants further contend that 6% interest on the judgment should not have been computed by the trial court from the date of the stated account (June 20, 1938), but, at most, from date of judgment. In view of the disclosure that, on June 20, 1938, the $7,300 had not been collected, and there being no evidence in the record as to when such was collected, we are not privileged to assume that the amount in suit should bear interest from the date of the account. However, we may well assume that on the date suit was filed (December 4, 1940) and demand made for payment by the representatives of Thomas' estate—no disclosure having been made by appellants as to when such collections were made— the refund at the time was due. The interest, under the record, is a damage item, necessarily dating from the filing of the suit; and appellants having failed to plead or prove that the $7,300 had not been collected, or, if collected, the date thereof, we may well assume that such was done prior to the demand. We therefore conclude that 6% interest on the amount of the judgment should be computed from December 4, 1940; thus the judgment of the court below is reformed and here rendered in accordance with the view expressed. The reduction in the amount of the judgment being relatively small, all costs are taxed against appellants.

Reformed and, as reformed, affirmed.